

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 19, 2014**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 12-35828-BJH |
| MARGAUX CITY LIGHTS PARTNERS, LTD., | § | (Chapter 11) |
| | § | |
| | § | RELATED TO DKT. 273 |
| | § | |
| DEBTOR. | § | |
| | § | |

## MEMORANDUM OPINION

Before the Court is the Amended Joint Objection of Matthew E. Malouf ("**Malouf**"), Malouf Interests, Inc. ("**Malouf Interests**"), and Minerva Partners, Ltd ("**Minerva**") to proofs of claim 4-3 and 4-4 (collectively, the "**Claim**") of Margaux Texas Ventures, Inc. ("**MTV**"). The Plan Agent under the confirmed plan of liquidation for Margeaux City Lights Partners, Ltd. ("**MCL**") also objected to the Claim. The Plan Agent, Malouf, Malouf Interests, and Minerva are collectively referred to as the "**Objectors**." The Claim, in the amount of $1,401,337.20, was

filed in the MCL bankruptcy case by the chapter 7 Trustee of MTV, John H. Litzler ("**Litzler**" or the "**Trustee**").  The Court heard the Objections on November 6 and 10, 2014 (the "**Hearing**").  This Memorandum Opinion contains the Court's findings of fact and conclusions of law.

I.     **FACTUAL BACKGROUND AND THE PARTIES' CONTENTIONS**

By way of brief factual background, MCL is a Texas limited partnership that was formed in June, 2004 to develop certain real property located near downtown Dallas.  The general partner of MCL was initially MDC City Lights, Inc. (the "**Initial General Partner**"), an entity controlled by Donald Silverman ("**Silverman**").  MC Exh. 21, Exh. E.[1]  Minerva, an entity controlled by Malouf, was the largest Class A Limited Partner of MCL, initially investing over $2 million and holding about 17.4% of the MCL partnership interests.  Margaux Partners CL Ltd. ("**MP CL**"), an entity controlled by Silverman, was the sole Class B Limited Partner of MCL.  *Id.*

Although the MCL partnership's history is a bit tortured, the short version of a much longer story is that disputes arose between Silverman and Malouf with respect to the management and operation of MCL.  Silverman filed for personal bankruptcy in 2010, along with MTV, an entity wholly owned by Silverman.  Litzler was appointed the Chapter 7 trustee for both Silverman and MTV.  Around the same time as the bankruptcy filings of Silverman and MTV, Silverman agreed that a Malouf entity should take control of MCL and, as a result, Malouf Interests became the general partner of MCL in 2010.

Unfortunately, a change in general partner for MCL did not resolve the disputes between Malouf and Silverman, who continued to disagree over many partnership business decisions.

---

[1] Exhibits introduced into evidence by Malouf, Malouf Interests and Minerva are referred to as **MC Exh.** followed by the exhibit number itself.  So, this reference is to Malouf Creditors Exhibit 21, Exhibit E.  Similarly, exhibits introduced into evidence by the Trustee are referred to as **Trustee Exh.**, followed by the exhibit number itself.

**Memorandum Opinion**                                                                                                          **Page 2**

And, after Malouf caused the MCL Chapter 11 case to be filed, Malouf and Silverman disagreed over most things in the MCL bankruptcy case, including how best to (i) deal with/dispose of MCL's real property, and (ii) "reorganize" MCL. While MCL's real property was sold during its bankruptcy case with Court approval, and the Court ultimately confirmed a consensual plan of liquidation for MCL, it is fair to say that MCL's Chapter 11 case did not proceed smoothly. Silverman or one of his entities objected to most motions filed by MCL in its bankruptcy case and disputed most Malouf business decisions during the case. In short, it became clear to the Court early on in MCL's bankruptcy case that (i) the disputes between Silverman and Malouf had become very personal, (ii) neither individual trusted the other, and (iii) each individual disliked the other greatly. If anything, the level of personal animus between Silverman and Malouf increased during the MCL bankruptcy case.

As relevant here, the Claim is supported by four "Demand Notes" signed by Silverman as President of the Initial General Partner of MCL. MCL is the maker of each note and MTV is the payee of each note. As required by section 3.5 of the Limited Partnership Agreement, Malouf signed each note as President of Malouf Interests, the sole general partner of Minerva, to "evidence [Minerva's] approval of the terms and provisions" of the note. *See, e.g.*, Trustee Exh. 3, at 3. The first note is dated January 1, 2006 and is in the principal amount of $514,289.10 (the "**2006 Note**"). Trustee Exh. 3. The second note is dated January 1, 2007 and is in the principal amount of $125,323.00 (the "**2007 Note**"). Trustee Exh. 4. The third note is dated January 1, 2008 and is in the principal amount of $3,546.49 (the "**2008 Note**"). Trustee Exh. 5. The fourth note is dated January 1, 2009 and is in the principal amount of $41,358.86 (the "**2009 Note**"). Trustee Exh. 6. The 2006 Note, the 2007 Note, the 2008 Note, and the 2009 Note will be collectively referred to as the "**Notes**." The parties agree that the Notes were executed in

October 2009, not at the time of any actual advance of monies by Silverman (or any Silverman entity, including MTV) to MCL.

Although each of the Notes recites that there was consideration for the issuance of that note by MCL, Malouf now challenges the accuracy of those recitals. In short, Malouf alleges that most of the monies allegedly "loaned" by Silverman, MTV, or one of his other entities to MCL, as allegedly evidenced by the Notes, was never actually advanced or, if it was advanced, it was agreed to be advanced as a capital contribution, not a loan. Thus, according to Malouf, the only amounts actually "loaned" to MCL under the Notes by or on behalf of MTV total $124,700, not the $684,517.25 face amount of the Notes. The Plan Agent joins in this objection to the Claim.

In support of his Objection, Malouf subpoenaed bank records from fourteen financial institutions pertaining to, among other things, bank accounts, loans, lines of credit, cashier's checks, money orders, and/or wire transfers in the name of, or for the benefit of, MTV, Silverman or MCL for the time periods allegedly underlying the Notes. MC Exh. 14a-14m. Malouf testified that over 6,000 pages of bank documents were received in response to his subpoenas. According to Malouf, these bank records prove that neither Silverman, MTV, nor any other Silverman entity ever "loaned" MCL anywhere near the $684,517.25 face amount of the Notes. According to Malouf, and as just noted, these bank records only support a finding that loans totaling $124,700 were made to MCL by or on behalf of MTV.

While neither the Trustee nor Silverman disputes the fact that the bank records do not fully support the amounts allegedly outstanding under the Notes, they point to other documents—largely the QuickBooks records and tax returns of MCL, as prepared by or at the direction of Silverman while he controlled the Initial General Partner—to prove the amounts

allegedly owing on the Notes. Moreover, the Trustee argues that Malouf is bound by the terms of the Notes since he approved their "terms and provisions" on behalf of Malouf Interests, the sole general partner of Minerva.

Two witnesses testified for the Objectors at the Hearing: Malouf and M.L. Speer ("**Speer**"), a certified public accountant. Two witnesses also testified for the Trustee at the Hearing: Silverman and Kelly McCullough ("**McCullough**"), a certified public accountant who works for Litzler's accounting firm and was employed as the Trustee's accountant in the MTV bankruptcy case. The Objectors and the Trustee also offered substantial documentary evidence in support of their respective positions. The Court's view of the testimonial and documentary evidence will be discussed further below.

## II.     LEGAL STANDARD AND BURDEN OF PROOF

The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. If a creditor "files a proof of claim meeting the standards of Bankruptcy Rule 3001(c) and Official Form 10, then Bankruptcy Rule 3001(f) is triggered, giving the creditor's claim *prima facie* evidence of its validity." *In re Armstrong*, 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005). At that point:

> [T]he burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents, or by the presentation of pretrial pleadings, such as a motion for summary judgment, in which evidence is presented to bring the validity of the claim into question. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.

*In re Rally Partners, L.P.*, 306 B.R. 165, 168-69 (Bankr. E.D. Tex. 2003) (citations omitted).

As relevant here, the Trustee filed the Claim and attached the Notes to it, along with other documents including a summary of the notes payable to Silverman and MTV as recorded on MCL's QuickBooks accounting records and an MCL balance sheet as of October 31, 2012. The Objectors agree that the Trustee's filed proof of claim satisfied the requirements of Bankruptcy Rule 3001(c) and Official Form 10 such that the Claim is prima facie evidence of its validity. Thus, the parties agree that the burden of going forward with the evidence shifted to the Objectors. However, the parties disagree over (i) whether the Objectors produced evidence at least equal in probative force to that offered by the Claim such that they properly placed the Claim in dispute, (ii) whether the burden of going forward with the evidence shifted back to the Trustee, and (iii) if it did, whether the Trustee sustained his ultimate burden of persuasion to establish the validity and amount of the Claim by a preponderance of the credible evidence.

For the reasons explained in more detail below, the Court finds and concludes that (i) the Objectors produced evidence at least equal in probative force to that offered by the Claim such that they properly placed the Claim in dispute, (ii) the burden of going forward with the evidence shifted back to the Trustee, and (iii) except for those amounts the subpoenaed bank records show were loaned to MCL by or on behalf of MTV, the Trustee failed to sustain his ultimate burden of persuasion to establish the validity of the Claim by a preponderance of the credible evidence.

### III.  LEGAL ANALYSIS

The starting point in the Court's legal analysis is the credibility of the evidence introduced at the Hearing. Because of the level of distrust and dislike that permeates the relationship between Silverman and Malouf, the Court has grave concerns about the accuracy of either of their (i) recollections of past events in their business relationship, and (ii) testimony in

connection with the Claim and the Objections. Given that Malouf was the primary witness who testified in support of the Objections and that Silverman was the primary witness who testified in support of the Claim, the Court's lack of confidence in the accuracy of either of the witnesses' testimony is problematic.

Moreover, Silverman's testimony was contradicted by documentary evidence introduced by the Trustee. For example, Malouf sent interrogatories, requests for admissions, and requests for production of documents to the Trustee in connection with the Objections. In Interrogatory No. 1, Malouf asked the Trustee to provide detailed information regarding each amount allegedly "paid, funded, or loaned by, or on behalf of, MTV" to MCL. MC Exh. 13, at 4. In his supplemental answer to Interrogatory No. 1, the Trustee provided detailed information about each advance and the source of documents allegedly supporting each advance. *Id.* at 4-6. With respect to the 2006 Note, four advances were identified with the descriptor "[p]ayment on behalf of MTV by Silverman from funds received from Malouf in consideration for Malouf's acquisition of partnership interest." *Id.* at 4, col. b. Silverman expanded on this descriptor in his oral testimony by explaining that MCL was obligated to pay real property taxes and interest on its bank debt but had no funds to pay those debts. To come up with the funds, Silverman testified that he offered to sell Malouf some of his Class B limited partnership interests in MCL. According to Silverman, in late 2005 he sold an approximate 6% Class B limited partnership interest in MCL to Malouf for $275,000, which he then loaned to MCL and which loans comprise a portion of the 2006 Note. Up to this point in Silverman's story, Trustee Exh. 27 is fairly consistent with his testimony.[2]

---

[2] The Court actually interprets the Assignment of Partnership Interest to sell Minerva some of Silverman's limited partnership interests in MP CL (the sole Class B Limited partner of MCL). However, whether Silverman sold a direct Class B limited partnership interest in MCL to Minerva or an indirect Class B limited partnership interest

**Memorandum Opinion** **Page 7**

Trustee Exh. 27 is an Assignment of Partnership Interest executed on December 22, 2005 by Silverman as assignor and by Malouf as President of Malouf Interests, the general partner of Minerva, as assignee. However, contrary to the rest of Silverman's story, Trustee Exh. 27 expressly requires that the $275,000 paid by Minerva be *contributed* by Silverman to MCL and that "in connection therewith, there shall be no additional capital contributions required of any of the partners . . . , nor shall [there] be any dilution of the currently existing partnership interests of the partners" of MCL. Trustee Exh. 27 ¶ 6, at 2. Thus, this $275,000 alleged "loan" by Silverman to MCL cannot be allowed as a claim against the MCL bankruptcy estate, as Silverman expressly agreed to contribute these monies to MCL.

Silverman and Malouf executed five other "Assignment of Partnership Interest" documents from March 22, 2006 through October 8, 2009. Trustee Exh. 28-32. These assignment documents become increasingly vague as time passes. For example, Trustee Exh. 28 is dated March 22, 2006. In it, Minerva agreed to deliver the aggregate sum of $184,309.60 to Texas Bank, which amount represented interest payments due on an MCL loan from Texas Bank, in exchange for an 8% interest in MP CL. While not as crisply stated as in Trustee Exh. 27, the Court concludes that these amounts were to be considered a capital contribution by Silverman to MCL and were not to dilute the ownership interests of any of the other MCL partners. Again, this is contrary to Silverman's testimony that Malouf/Minerva bought some of his Class B limited partnership interests in MCL and then he "loaned" those monies to MCL as evidenced by the Notes. Because the $184,309.60 was a capital contribution from Silverman to MCL, those amounts cannot be allowed as a claim against the MCL bankruptcy estate either.

---

through MP CL, is of no consequence to this decision. Silverman, a non-lawyer, may simply have been imprecise in how the Class B limited partnership interest transferred.

Because Silverman's testimony is contradicted by the express terms of documents he signed, among other documents, the Court cannot find Silverman to be a credible witness. And, while Malouf's testimony was not contradicted as directly by any documentary evidence he signed, the Court struggles to find him to be a credible witness either.

For example, Malouf testified that his lawyer did not prepare the Notes. However, Malouf's lawyer, Jonathan Smith ("**Smith**"), stated in an email to Silverman's lawyer, David Chang ("**Chang**"), "[a]ttached are the following demand notes that I have prepared in connection with the various loans from Don Silverman and Matt Malouf to Margaux City Lights Partners, Ltd." Trustee Exh. 13, at 3. When shown this exhibit, Malouf continued to deny that his lawyer actually prepared the Notes. Moreover, Malouf testified that he asked Silverman for the backup documents underlying the amounts Silverman claimed to have "loaned" to MCL when they decided to reduce their respective "loans" to MCL to demand notes. And, while no such documents were provided, Malouf went ahead and approved the "terms and provisions" of the Notes in accordance with section 3.5 of the Partnership Agreement. This testimony is somewhat inconsistent with an email exchange between Smith and Chang, in which Chang asks if "it would be advisable to list, at the end of the 1st paragraph of each note, the individual amounts advanced for that particular year and their corresponding date of advancement, so that it is apparent from the face of the note itself what the amounts in question are and what is the actual date of each advancement . . . ?" *Id.* at 2. Smith responds by stating, among other things, "[t]he notes are fine as they are – please, no more changes." *Id.* at 1.

Why Malouf would approve the "terms and provisions" of the Notes when he had doubts about the amounts actually "loaned" by Silverman to MCL, as he now testifies, is perplexing, particularly given Malouf's business experience and sophistication. And, while Malouf

explained that he thought it was all right to proceed because he could insist upon proof of the amounts of the actual loans later when demand for repayment was made, that view is largely inconsistent with the legal rights of the payee of a demand note.

Two other witnesses testified at the hearing on the Objections: Speer and McCullough. However, neither of these witnesses' testimony was very helpful and both witnesses' direct testimony was substantially undercut on cross-examination.

For example, Speer testified that MTV's claim against MCL is at most $219,359, the amount reported to the IRS as due from MCL on MTV's 2009 tax return. MC Exh. 11 K, at 11. However, if tax returns are credible evidence of the amount of MTV's claim, Speer's testimony does not take into account information from MCL's 2010 tax return, which shows $220,780 due to MTV and $443,149 due to Silverman, which Silverman testified that he contributed to MTV, for a total owing to MTV of $663,929. Trustee Exh. 34. From the Court's perspective, however, even the larger amounts shown on the MCL 2010 tax return do not match the face amounts of the Notes, which aggregate $684,517.25.[3]

Similarly, McCullough testified that he was satisfied that the Claim was valid and owing to MTV based largely upon the QuickBooks records of MCL, which he reviewed. As he explained it, once the Objections were filed, the Trustee charged him with the task of attempting to find the backup detail in the Silverman entities' books and records to substantiate the amounts

---

[3] Other documentary evidence is equally confusing. For example, MC Exh. 13 contains the Trustee's Supplemental Answers to Interrogatory No. 1. In his Supplemental Answer, the Trustee provides detailed information with respect to each Note. With respect to the 2006 Note, the Trustee identifies 6 "loans" made by or on behalf of MTV to MCL, which aggregate $443,149.12, some $71,139.98 less than the face amount of the 2006 Note. The reverse problem appears with the Trustee's identified "loans" purportedly underlying the 2007 Note. Here, the Trustee identifies ten "loans" aggregating $202,875.00, but the face amount of the 2007 Note was only $125,323.00, an excess of "loans" apparently thought to underlie the 2007 Note of $77,552. While the 2008 Note is in the face amount of $3,546.49, the Trustee was only able to identify a $100 "loan." And, with respect to the 2009 Note, the Trustee identifies "loans" of $44,805.35, while the face amount of the 2009 Note was $41,358.86. In short, this Supplemental Answer identifies total advances of $690,929.47, not the aggregate face amount of the Notes ($684,517.25) or the amounts reflected on MCL's books and records ($663,929).

shown as owing under the Notes. However, even McCullough was unable to explain why the records he found show the amount owing to MTV to be $663,929, not the aggregate face amount of the Notes ($684,517.25). From the Court's perspective, McCullough's testimony is, at best, imprecise—the Claim can't be valid and owing when it seeks to recover the aggregate face amount of the Notes and that amount is unsupported by the books and records of MCL. McCullough's misstatement is compounded by the fact that the Claim then seeks to recover interest on amounts not supported by MCL's books and records.

Moreover, on cross-examination, Malouf established that McCullough has a financial interest in the outcome of this dispute, as neither he nor his accounting firm (nor his brother's law firm, who is counsel to the Trustee in the MTV bankruptcy case and is defending the validity of the Claim here) will be paid for their work unless this Court allows the Claim given the current administrative insolvency of the MTV bankruptcy estate.

Thus, on balance, none of these witnesses' testimony will carry the day for either the Objectors or the Trustee.

Given the Court's concerns about the accuracy and reliability of the testimonial evidence at the Hearing, the Court looks next to the documentary evidence offered by the parties to see if it is (i) credible, and (ii) either corroborates or contradicts the witnesses' oral testimony. Unfortunately, there are also problems with at least some of the documentary evidence. For example, and as noted previously, the Trustee relies upon primarily upon the QuickBooks records of MCL to support the Claim. Because those QuickBooks records can be easily manipulated—i.e., it is easy to record payables to someone for monies that were not really "loaned," or were contributed instead of loaned—the Court lacks confidence in their reliability without more.

The "more" here would be documents that show the source of the monies "loaned" to MCL by or on behalf of MTV. Logically, those documents would include, among other things, cancelled checks, wire transfer receipts, and/or bank account statements evidencing electronic transfers between related bank accounts at the same or another financial institution. But the Trustee offers no such evidence in support of the Claim.

Rather, it is the Objectors that looked to this type of incontrovertible evidence to determine whether "loans" were actually made to MCL by or on behalf of MTV. Specifically, Malouf caused subpoenas to be issued to fourteen financial institutions requesting the production of documents pertaining to, among other things, bank accounts, loans, lines of credit, cashier's checks, money orders, and/or wire transfers in the name of, or for the benefit of, MTV, Silverman, or MCL. MC Exh. 14a-14m. Malouf testified that over 6,000 pages of bank documents were received in response to his subpoenas. And, after reviewing these bank documents, Malouf no longer objects to (i) the $37,600 "loan" on December 15, 2006, which is shown to underlie the 2006 Note, MC Exh. 13, at 4; (ii) the $10,500 "loan" on October 26, 2005, which is shown to underlie the 2007 Note, *id.*, at 5; (iii) the $17,500 "loan" on June 28, 2006, which is shown to underlie the 2007 Note, *id.*; (iv) the $25,000 "loan" on August 30, 2006, which is shown to underlie the 2007 Note, *id.*; (v) the $17,000 "loan" on September 29, 2006, which is shown to underlie the 2007 Note, *id.*; (vi) the $17,000 "loan" on October 2, 2006, which is shown to underlie the 2007 Note, *id.*; and (vii) the $100 "loan" on April 4, 2008, which is shown to underlie the 2008 Note, *id.*, as he is satisfied that these amounts were actually "loaned"

to MCL by or on behalf of MTV.  But, according to Malouf, no other "loans" to MCL by or on behalf of MTV can be found in the subpoenaed bank records.[4]

Finally, the Objectors contend that the $37,600 "loan" on December 15, 2006, which is shown to underlie the 2006 Note on MC Exh. 13, is not recoverable by the Trustee because MTV transferred the 2006 Note to Suzan Cooper on October 15, 2009, shortly after it was signed.  MC Exh. 9.  Thus, according to the Objectors, Ms. Cooper owns the 2006 Note, and she is the proper party to assert that claim in MCL's bankruptcy case.

The Trustee disagrees with the Objectors' argument, as does this Court.  While the Pledge & Assignment of Promissory Note, drafted by Silverman, is not a model of clarity and, in fact, may be ambiguous, the actual parties to that agreement, Silverman and Ms. Cooper, both agree that she simply received a pledge of the 2006 Note to secure repayment of monies owed to her by MTV.  On this record, the Court cannot find that ownership of the 2006 Note was transferred to Ms. Cooper in 2009.  Thus, the Court finds and concludes that Ms. Cooper received a pledge of the 2006 Note, the Trustee owns the 2006 Note, and the Trustee is the proper party to assert a claim against MCL based upon the 2006 Note.

One last issue must be addressed: the Trustee's contention that Malouf cannot challenge the amounts owing under the Notes since he approved their "terms and provisions" in 2009. From the Court's perspective, there are at least two problems with this legal contention.  First, the argument is a bit of a red herring, as the Plan Agent for MCL would not be bound even if Malouf was.  And the Plan Agent raises the same objection to the Claim as does Malouf, Malouf Interests, and Minerva—i.e., that most of the amounts allegedly owing on the Notes were never

---

[4] The Trustee seemingly agrees with Malouf on this, as he pointed to no other "loans" to MCL by or on behalf of MTV that are evidenced by the subpoenaed bank records.

**Memorandum Opinion**                                                                                            **Page 13**

actually "loaned" to MCL by or on behalf of MTV. Second, the Trustee is simply wrong as a legal matter. While the statement of amount owing in the Notes raises a presumption under Texas law that the amounts stated are actually owing, a party may rebut this presumption by showing that no consideration was actually given. *See, e.g.*, *In re Texas Standard Oil Co.*, No. 08-34031-H4-11, 2008 WL 5479114, at *4 (Bankr. S.D. Tex. Nov. 12, 2008) (citing *Maykus v. Tex. Bank & Trust Co. of Dallas*, 550 S.W.2d 396, 398 (Tex.Civ.App. – Dallas 1977, no writ); Restatement (Second) of Contracts § 218).

So, where does all this leave us? Given (i) the problems associated with the oral testimony of the witnesses and the QuickBooks records of MCL discussed above, and (ii) the Objectors' reliance on the subpoenaed bank records and what they show, the Court is satisfied that the Objectors produced evidence at least equal in probative force to that offered by the Claim such that they properly placed the Claim in dispute. Thus, the burden of going forward with the evidence shifted back to the Trustee. *Armstrong*, 320 B.R. at 104; *Rally Partners*, 306 B.R. at 168-69.

From the Court's perspective, the Trustee simply failed to sustain his ultimate burden of persuasion to establish the validity of the entirety of the Claim by a preponderance of the credible evidence. While the subpoenaed bank records prove that $124,700 was actually "loaned" to MCL by or on behalf of MTV, there is no credible evidence to show that any other amounts were actually "loaned" to MCL by or on behalf of MTV.

Accordingly, the Claim shall be allowed in the principal amount of $124,700, together with interest on that amount in accordance with the terms of the Notes. While the Objectors suggest that interest through the date of MCL's bankruptcy filing is approximately $124,700, neither the Objectors nor the Trustee has calculated the precise amount of interest owing to MTV

on a principal claim of $124,700. Thus, the Court directs the parties to make such a calculation and submit an agreed form of Order to the Court, within ten business days of the issuance of this Memorandum Opinion, allowing the Claim in the amount of $124,700 plus interest from the date of each "loan" to the date of MCL's bankruptcy filing. If a dispute arises as to the correct calculation of interest owing to MTV, the parties are directed to submit their respective calculations to the Court, who will then determine the amount of interest owed.

### End of Memorandum Opinion ###