

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 24, 2014**

**United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Bankr Case No. 12-35828-BJH** |
| **MARGAUX CITY LIGHTS** | § | **(Chapter 11)** |
| **PARTNERS, LTD.,** | § | |
| | § | **Related to Dkt. No. 290** |
| **DEBTOR.** | § | |

## MEMORANDUM OPINION

Before the Court is the Plan Agent's Motion Pursuant to Fed. R. Bank. P. 9019 for Order Approving Settlement Agreement [Dkt. No. 290] (the "**Motion**"), pursuant to which Frances Smith, the liquidating plan agent (the "**Plan Agent**") for Margaux City Lights Partners, Ltd. ("**MCL**"), requests that this Court approve a compromise and settlement by and between the Plan Agent, on behalf of MCL, on the one hand, and Matthew Malouf ("**Malouf**"), Malouf

Interests, Inc. ("**Malouf Interests**"), and Minerva Partners, Ltd. ("**Minerva**"),[1] on the other. The terms of the proposed settlement (the "**Settlement**") are relatively straight-forward: subject to final documentation, proof of escrowed funds and Court approval, the Defendants will make a one-time payment of $100,000 to the Plan Agent for the benefit of MCL, and the Plan Agent, on behalf of MCL, will release its claims against the Defendants and seek dismissal of the Prepetition Lawsuit (defined below). The sole objection to the Motion [Dkt. No. 304][2] (the "**Objection**") was filed by the Elana Spitzberg Trust and JRR Ventures, Ltd., two limited partners of MCL (together, the "**Objecting LPs**").[3]

The Court held a hearing on the Motion on November 4, 2014 (the "**Hearing**"), at which time it announced its preliminary findings with respect to the Motion. Specifically, the Court found that, in light of the evidence presented at the Hearing, entry into the Settlement would be an exercise of the Plan Agent's sound business judgment and in the best interests of MCL and its creditors. The Court, however, took under advisement the issue of whether the claims proposed to be released pursuant to the Settlement are derivative claims, which were property of the MCL estate that transferred to the liquidating debtor to be litigated or settled by the Plan Agent, or individual claims held by the Objecting LPs. For the reasons set forth below, the Court finds that, with the exception of any claims arising from (1) the Defendants' alleged failure to timely provide tax returns and tax-related information to the Objecting LPs and MDC Private Retail Investors, Ltd. (the "**Plaintiffs**"), and (2) the alleged fraudulent inducement of the Plaintiffs to

---

[1] Minerva and Malouf Interests are each controlled by Malouf. Malouf, Malouf Interests, and Minerva are collectively referred to as the "**Defendants**."

[2] The Objection at Dkt. 301 is missing a page. A complete objection is filed at Dkt. 304.

[3] Prior to the Hearing, the parties filed additional documents in support of their respective pleadings, including, the Defendants' reply in support of the Motion [Dkt. No. 307], the Objecting LPs' supplemental objection [Dkt. No. 310] (the "**Supplemental Objection**"), the Objecting LPs' response to the Defendants' reply [Dkt. No. 309], and the Defendants' reply to the Supplemental Objection [Dkt. No. 312]. The Defendants also filed a post-Hearing brief. Because such brief was not requested, it was not considered by the Court.

enter into the Amended and Restated Agreement of Limited Partnership of Margaux City Lights Partners, Ltd. (the "**LP Agreement**"), the causes of action asserted in the Second Amended Petition are derivative claims that were property of the MCL estate, which the Plan Agent now has authority to compromise and release pursuant to the terms of the liquidating plan confirmed in MCL's bankruptcy case.

## I.    FACTUAL AND PROCEDURAL HISTORY

MCL was a limited partnership formed in 2004 to invest in multiple parcels of unimproved real estate near downtown Dallas.  At the time of its formation, MDC City Lights, Inc. ("**MDC**"), an entity controlled by Donald Silverman, was its general partner.  As noted previously, MCL's limited partners included, among others, the Objecting LPs.  *See* LP Agreement [LP[4] Ex. 1].  In November 2010, MDC withdrew as MCL's general partner and Malouf Interests was appointed in its place.  *See* Withdrawal of General Partner and Appointment of Replacement General Partner of Margaux City Lights Partners, Ltd. [LP Ex. 2] (the "**Withdrawal of General Partner**").

On or about November 22, 2011, the Plaintiffs sued the Defendants in the case styled *Spitzberg v. Malouf, et al.,* Case No. DC-2011-14800-M, currently pending in the district court of the 192nd Judicial District, Dallas County, Texas (the "**Prepetition Lawsuit**").  The first amended petition filed by the Plaintiffs alleged fifteen separate causes of action against the Defendants, with each claim being brought individually by the Plaintiffs and derivatively on behalf of MCL.  *See* Plaintiffs' First Amended Petition and Application for Receiver, Accounting and Constructive Trust [Dkt. No. 290-1] (the "**First Amended Petition**") at ¶¶ 39, 44, 49, 53, 56, 59, 62, 67, 71, 74, and 78.  Shortly before the Hearing, the Plaintiffs filed a

---

[4] "LP" refers to exhibits submitted into evidence by the Objecting LPs.

second amended petition that narrowed the enumerated counts from fifteen to eight and purported to remove all derivative claims.  *See* Elana Spitzberg Trust's, JRR Ventures, Ltd.'s and MDC Private Retail Investors, Ltd.'s Second Amended Petition [LP Ex. 7] (the "**Second Amended Petition**").[5]

The general allegations underlying the Second Amended Petition are that the Defendants took various actions, and made various misrepresentations, in breach of the LP Agreement and their fiduciary duties owed to the Plaintiffs, including usurping MCL's business opportunities, selling and/or transferring MCL's assets without consideration or necessary approvals, taking steps to place the Defendants' debts and interests ahead of those held by the Plaintiffs, failing to provide to the Plaintiffs required information regarding MCL's operations, and fraudulently inducing the Plaintiffs to enter into the LP Agreement and the Withdrawal of General Partner.

In light of the allegations in the Second Amended Petition and the terms of the Settlement, the issue before the Court is two-fold.  First, the Court must determine whether the terms of the Settlement meet the requirements for approval under Federal Rule of Bankruptcy Procedure 9019.[6]  Second, as part of this analysis, the Court must determine whether the claims alleged in the Second Amended Petition are direct claims that may be pursued by the Plaintiffs, including the Objecting LPs, or derivative claims that may only be pursued or released by the Plan Agent.

---

[5] The Second Amended Petition was subsequently amended by a third amended petition, which was not introduced into evidence at the Hearing.  At the Hearing, the Objecting LPs' counsel represented that the third amended petition was filed to correct a typo in the opening paragraph; otherwise, the second and third amended petitions are substantively identical.

[6] The liquidating plan requires the Plan Agent to seek Court approval of settlements over $50,000.  The Plan Agent and the Objecting LPs have each analyzed the post-confirmation Settlement under the rubric of Rule 9019; thus, the Court will do the same.

## II.      LEGAL ANALYSIS

This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052.[7]  This Court has jurisdiction to decide the matters before it pursuant to 28 U.S.C. §§ 1334 and 157(a) and the retention of jurisdiction provisions contained in the liquidating plan previously confirmed by this Court.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

### A.      Approval of the 9019 Motion

This Court is authorized to approve settlements in accordance with Federal Rule of Bankruptcy Procedure 9019(a).  "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate."  *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) (internal quotations omitted).  In *Cajun*, the Fifth Circuit stated that:

> In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, comparing the terms of the compromise with the likely rewards of litigation.  In particular, the judge must evaluate and set forth in a comprehensible fashion:  (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise.

*Id*. at 355–56 (internal quotations and citations omitted).

In explaining what bankruptcy courts must do to satisfy the first factor (the probability of success in the litigation), the Fifth Circuit further stated that "it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement.  'The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision....'"  *Id*. at 356 (quoting *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987)).  Finally, the Fifth Circuit noted in *Cajun* that

---

[7] To the extent that a finding of fact is more properly construed as a conclusion of law, or a conclusion of law as a finding of fact, it should be so construed.

> [u]nder the rubric of the third, catch-all provision, we have specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider the best interest of the creditors, with proper deference to their reasonable views. Second, the court should consider the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.

*Id*. (internal quotations and citations omitted).

The Objection to the Settlement can be broken down into to two general categories. First, the Objecting LPs allege that the Settlement is unreasonable because Malouf, as the party having the most to gain from the Settlement, is coming to the Court with unclean hands and should not benefit from either the release in the Settlement or payment on the claim Minerva filed against the MCL estate. Second, according to the Objecting LPs, the Plan Agent is improperly seeking to have the Plaintiffs' individual claims re-characterized as derivative and dismissed per the Settlement.

Before addressing the allegations in the Objection, the Court notes that the Plan Agent testified that MCL has insufficient funds to pay a distribution to the limited partners. And, in all likelihood, even if MCL's claims against the Defendants were successfully litigated, it is unlikely that sufficient funds would be recovered, after reduction for costs of the litigation, to pay allowed unsecured claims in full, meaning that the limited partners will receive no distribution in accordance with the absolute priority rule. When questioned by the Court at the Hearing, the Objecting LPs' counsel conceded that her clients likely did not have an economic interest in the outcome of either the Settlement or the litigation of MCL's claims against the Defendants. Thus, the Court doubts that the Objecting LPs have standing to object to the reasonableness of the Settlement. Nonetheless, in an abundance of caution, the Court will consider both issues raised in the Objection.

### 1. Minerva's Claim Against the MCL Estate was Previously Allowed, and May Not Be Attacked on Equitable Grounds.

The Objecting LPs first argue that the Defendants' actions were the product of self-dealing done with an eye towards creating opportunities and personal gain for themselves at the expense of the Plaintiffs and MCL, in breach of the LP Agreement and the various fiduciary duties allegedly owed by the Defendants to the Plaintiffs. Accordingly, "[i]t would be inequitable to allow Malouf to benefit from his unclean hands in this scenario." Objection at ¶ 11. The Objecting LPs then argue that a fiduciary that breaches his duties cannot benefit from his usurpation and that the remedy of equitable forfeiture is available. *Id.* at ¶ 14. Per the Objecting LPs, Malouf should not be permitted to benefit from the Settlement, both through dismissal of the Prepetition Lawsuit and the return of the bulk of the Settlement payment on account of the substantial claim that Minerva filed against the MCL bankruptcy estate. *Id.* at ¶¶ 13-14. The Court disagrees, as explained below.

On December 31, 2012, Minerva filed Claim No. 8 against MCL, alleging a general unsecured claim for "money loaned" in the amount of $4,482,903.79. Minerva subsequently amended its claim upwards to $5,357,108.75. Any party in interest, including the limited partners of MCL, could have objected to Minerva's claim. However, only the Plan Agent objected to Claim No. 8, and she did so on multiple grounds [Dkt. No. 206].[8] The parties ultimately reached a resolution of the Plan Agent's objection, which was announced at the June 30, 2014 hearing to consider the Plan Agent's objection to Minerva's claim. On July 14, 2014, the Court entered an Agreed Order [Dkt. No. 247] allowing Minerva's claim as a general

---

[8] The Court's records indicate that the Objecting LP's counsel received ECF notice of the Plan Agent's objection to Minerva's claim and the hearing on the objection.

unsecured claim in the amount of $5,556,674.37.[9] The Order allowing Minerva's claim has since become a final, non-appealable order, and the time for parties to attack the allowance and/or payment of Minerva's claim has passed. As such, the Court concludes that the Objecting LPs' request that the Court withhold payment on Minerva's allowed claim must fail. *See, e.g., Adam v. Itech Oil Co. (In re Gibraltar Res., Inc.)*, 210 F.3d 573 (5th Cir. 2000) (*res judicata* bound creditors to unappealed settlement approved by the Court); *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 744 (5th Cir. 1993) (*res judicata* barred lender liability claims based on loans that had been deemed allowed claims without objection in a previous bankruptcy).

> **2.     With Limited Exceptions, the Claims Alleged in the Second Amended Petition Are Derivative Claims that May Only be Pursued or Released by the Plan Agent.**

With respect to the underlying nature of the claims alleged in the Second Amended Petition, the Objecting LPs argue that:

> [T]he Settlement improperly seeks to have Plaintiffs' individual claims characterized as derivative, thus belonging to MCL, and dismissed. Objectors object to characterizing their individual claims as derivative, as they were brought and exist separate and apart from the derivative claims brought on behalf of MCL. For example, plaintiffs, who are limited partners in MCL, have brought breach of contract claims and tort claims, like breach of fiduciary duty, against the Malouf Parties that are separate and distinctive claims from those of MCL.

Objection at ¶ 15. The Objecting LPs, however, provide no case law in support of the alleged "individual" nature of the claims in either their Objection or their Supplemental Objection.

Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). As explained by the Fifth

---

[9] At the hearing on the Plan Agent's Objection to Claim No. 8, the Plan Agent explained how the final, allowed amount of the claim was calculated, including interest calculations that resulted in an allowed amount different from that reflected in the underlying claim.

Circuit in *Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Trust)*, 25 F.3d 1281, 1283-84 (5th Cir. 1994):

> [P]roperty of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). The term "all legal or equitable interests" has been defined broadly to include causes of action. *See Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988) ("Section 541(a)(1)'s reference to 'all legal or equitable interests of the debtor in property' includes causes of action belonging to the debtor at the time the case is commenced."); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (1983) (noting that the meaning of the term "all legal or equitable interests" includes, at the very least, rights of action). If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim. *See Matter of S.I. Acquisition, Inc*., 817 F.2d 1142, 1153-54 (5th Cir. 1987) (observing that the "general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly" requires that the trustee have the first opportunity to pursue estate actions without interference from individual creditors); *see also In re E.F. Hutton Southwest Properties II, Ltd*., 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) ("If an action belongs to the estate, the trustee has the power and duty to prosecute the action for the benefit of all creditors and shareholders in the estate."). If, on the other hand, a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action. *See Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 433-34, 92 S. Ct. 1678, 1688, 32 L.Ed.2d 195 (1972) (holding that a trustee does not have standing to sue a third-party on behalf of debenture holders); *In re Rare Coin Galleries of America,* Inc., 862 F.2d 896, 900 (1st Cir.1988) ("The trustee, however, has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them.").

"Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case." *Id*. (citing cases). The Court, however, does not evaluate the merits of the underlying claim in making its analysis. Whether the claim will "ultimately prove to be legally or factually valid is not [the court's] concern." *Seven Seas*, 522 F.3d at 585. Nor does it turn on the label given to the claim. The court should look past the nominal title given a claim when assessing whether it is in substance a derivative claim. *In re R.E. Loans, LLC,* 2013 WL 1265205, *4 (N.D. Tex. March 28, 2013) (citing *In re Madoff,* 848 F. Supp. 2d 469, 482 (S.D.N.Y. 2012)).

To determine whether the debtor could have raised the claim as of the commencement of its bankruptcy case, the court, "[a]s part of this inquiry, [looks] at the nature of the injury for which relief is sought." *Educators Grp.*, 25 F.3d at 1284; *Seven Seas*, 522 F.3d at 585 ("[W]e consider whether under state law [the debtor] could have raised the claims as of the commencement of the bankruptcy, and examine the nature of the injury for which relief is sought."). "If a cause of action alleges only indirect harm to a creditor (*i.e.*, an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Educators Grp.,* 25 F.3d at 1284 (citing cases), *R.E. Loans*, 2013 WL 1265205, at *4. "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Educators Grp.,* 25 F.3d at 1284; *R.E. Loans*, 2013 WL 1265205, at *4. Indeed, "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *Seven Seas,* 522 F.3d at 585 (citing *In re Zale Corp*., 62 F.3d 746, 753 (5th Cir. 1995)).

With this understanding of the law firmly in mind, the Court turns to an analysis of the Second Amended Petition, which alleges the following causes of action against the Defendants: Count 1 – Breach of Contract, Count 2 – Breach of Fiduciary Duties, Counts 3 through 6 – Fraud, Fraud in the Inducement, Fraud by Nondisclosure, and Statutory Fraud, Count 7 – Negligent Misrepresentation, and Count 8 – Civil Conspiracy. The Plaintiffs also allege an entitlement to attorneys' fees and exemplary damages.

As a preliminary matter, the Court notes that, in each instance, the Plaintiffs' alleged damages in the Second Amended Petition are not articulated, but are instead described merely as being in excess of the state court's jurisdictional limits. *See* Second Amended Petition at ¶¶ 43, 47, 52, and 56. Indeed, the Court could not find any instance within the petition where the Plaintiffs specifically alleged individual harm arising from the Defendants' alleged actions. This failure will be discussed in more detail, on a count-by-count basis, below.

a. Count 1: Breach of Contract

As alleged by the Plaintiffs in Count 1:[10]

> The organizational documents for [MCL] require Defendants to provide Plaintiffs with information about [MCL's] business affairs, including without limitation, the sale of the Property, properly notice and hold regular meetings to make certain decisions, disclose any relationships between the Defendants and Lubbock National Bank, timely provide tax returns and tax information for the Plaintiffs, and to follow certain provisions for cash calls,[11] assignments and the disposition of partnership assets. As set forth herein, Defendants failed to meet these and other contractual obligations and thus materially breached the [LP Agreement].

*Id.* at ¶ 42.

The Plan Agent argues that the Plaintiffs' standing to bring a cause of action for breach of the LP Agreement is inherently tied to their capacity as signatories to the LP Agreement. Therefore, according to the Plan Agent, any cause of action for breach of the LP Agreement is derivative and belongs solely to MCL pursuant to the confirmed liquidating plan. Motion at ¶ 19 (citing *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006); *Moore v. Simon Enter., Inc.*, 919 F. Supp. 1007, 1010 (N.D. Tex. 1995)). Neither of these cases, however, is directly applicable to the issue at hand.

---

[10] Because the allegations in the Second Amended Petition are central to this Court's analysis, the relevant portions are set forth *verbatim* in this Memorandum Opinion.

[11] Although the Plaintiffs allege that the Defendants failed to follow the proper procedure for cash calls, the evidence at the Hearing showed that the Plaintiffs made no additional capital contributions to MCL after their initial investment, nor did they suffer any damages related to any failure to meet any allegedly improper cash call.

In *Willis*, the primary breach of contract issue was whether majority shareholders in closely held corporations (the Willises) could be held individually liable to a minority shareholder (Donnelly) who entered into a contractual business arrangement with the corporations. The Texas Supreme Court held that the Willises could not be held individually liable on the contract because Donnelly entered into the agreement with the corporate entities, not Willis in his individual capacity, and Donnelly's ratification theory for holding the Willises liable failed as a matter of law. *Willis*, 199 S.W.3d. at 270-274.

In *Moore*, the plaintiff was a 20% limited partner of Hurst Mall Company ("**HMC**"), with the remaining 80% being held by Simon Enterprises, Inc. ("**SEI**"). SEI owned 50% of HMC in its capacity as general partner and 30% in its capacity as limited partner. *Moore*, 919 F. Supp. at 1009. Plaintiff alleged that SEI violated the limited partnership agreement by attempting to transfer or assign its interest as a general partner without the required consent, which allegedly constituted a breach of SEI's fiduciary duty to plaintiff and HMC. *Id.* The lawsuit was ultimately removed to the District Court for the Northern District of Texas based upon diversity of citizenship. *Id.* The District Court raised the issue of whether plaintiff's claims were derivative or direct. If the claims were derivative, HMC must be joined as an indispensable party, even if such joinder divested the District Court of diversity jurisdiction. *Id.* The court ultimately held that the plaintiff's claims were derivative due primarily to the nature of the alleged damages. "At the end of the day, Plaintiff alleges that through the various wrongs of Defendant Plaintiff has suffered a loss in the value of his interest in [HMC]." *Id.* at 1011. Thus, although the court in *Moore* did analyze whether the asserted claims were direct or derivative in nature, the extent of *Moore's* application to our case is its

general statement of the law, which comports with that previously detailed by this Court. *See* § II.A.2, *supra*

Here, the Plaintiffs' claim for breach of contract centers on allegations that the Defendants breached the LP Agreement by failing to: (1) provide Plaintiffs with information regarding MCL's business affairs, including the sale of real estate, (2) properly notice and hold regular meetings to make certain decisions, (3) disclose any relationships between the Defendants and a secured lender, (4) timely provide tax returns and tax information to the Plaintiffs, and (6) follow certain provisions for cash calls, assignments, and the disposition of partnership assets. Based on the facial allegations of the Second Amended Petition, with one limited exception (discussed below), the Court finds that, as of the bankruptcy petition date, MCL could maintain a cause of action against the Defendants for breach of the LP Agreement, and the alleged damages to the Objecting LPs are derivative of direct injury to MCL. Further analysis is required to place the Court's findings into perspective.

As previewed above, the Plaintiffs vaguely describe their damages arising from the Defendants' alleged breach of the LP Agreement as follows:

> Plaintiffs' injuries were a natural, probable, and foreseeable consequence of Defendants' breaches, which proximately caused Plaintiffs actual, consequential and special damages in excess of the minimum jurisdictional limits of this Court for which they now sue.

Second Amended Petition at ¶ 43. Although this description may meet state court pleading requirements, it fails to describe the nature of the underlying alleged damages. At the Hearing, the Court asked counsel for the Objecting LPs[12] to articulate the direct injury suffered by her clients, *i.e.,* damages not resulting from an alleged diminution in MCL's value. With the sole exception of theoretical damages related to tax liability (discussed below), she was unable to do

---

[12] Counsel for the Objecting LPs also serves as counsel to the Plaintiffs in the Prepetition Lawsuit.

so.  As such, based upon the facial allegations of the Second Amended Petition, the Court must find that the Plaintiffs' alleged damages are derived from direct damages to MCL, making the claim property of the MCL estate that may only be pursued or released by the Plan Agent in accordance with the liquidating plan confirmed in MCL's bankruptcy case.

The one exception to this finding is any damages arising from the Defendants' alleged failure to timely provide tax returns and tax information to the Plaintiffs.  At the Hearing, counsel for the Objecting LPs argued that the Plaintiffs were harmed because the Defendants failed to timely provide tax returns and tax-related information to the Plaintiffs so that they could timely file their own returns.  Further, Malouf Interests allegedly moved property between MCL and another entity, so the Plaintiffs' respective tax returns, as filed, may not accurately depict what happened during the tax year.  Because of this, the Plaintiffs may have outstanding tax issues, may have to amend their filed returns, and may have additional tax liability, harm that is allegedly unique to the limited partners and separate and apart from any harm to MCL.  When questioned, counsel for the Objecting LPs admitted that her clients were not subject to a pending audit and damages were currently theoretical.  Nonetheless, the Court finds that, to the extent such damages arise, they are individual to each limited partner and not dependent on damage to MCL.  Thus, a claim for breach of the LP Agreement based upon the Defendants' alleged failure to timely provide tax returns and tax-related information is a direct claim that may be pursued by the Plaintiffs, including the Objecting LPs.

Based upon the facial allegations of the Second Amended Petition, the Court finds that the remaining claims for breach of the LP Agreement allege direct harm to MCL, with any harm to the Plaintiffs arising derivatively due to the diminution in value of their limited partnership

interests in MCL.  Thus, the Court concludes that the remaining breach of contract claims were property of the MCL estate that now may only be pursued or released by the Plan Agent.

b.  <u>Count 2:  Breach of Fiduciary Duty</u>

As alleged by the Plaintiffs in Count 2:

The relationship between Plaintiffs, [MCL,] and the Defendants was one of trust and confidence.  Defendants, as limited and/or general partners of Plaintiffs, had a duty of loyalty and care to Plaintiffs, a duty not to self-deal and conspire with one another to self-deal, a duty not to hide or steal assets, a duty not to usurp partnership opportunities and a duty not to compete with and/or deal with the partnership in a manner that is adverse to it or the other partners. Defendants had a duty to provide limited partners in [MCL] with information as set forth herein. Malouf Interests and the other Defendants have breached their fiduciary duties, including the duty of care and duties of loyalty and honesty and good faith and fair dealing to Plaintiffs.

Second Amended Petition at ¶ 46.

According to the Plan Agent, for a fiduciary relationship to exist in a business transaction, the "relationship must exist prior to, and apart from, the agreement made the basis of the suit." Motion at ¶ 25 (citing *Schlumberger Tech. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)).  The Plan Agent then argues that the Plaintiffs have alleged no basis for a fiduciary obligation owed by the Defendants other than their alleged capacities as "limited and/or general partners of Plaintiffs."  In addition, the Plan Agent argues that the Plaintiffs have also failed to allege how they were injured directly or independently of the partnership, which is required to demonstrate the right to assert a direct cause of action.  *Id.* (citing *Whalen v. Carter*, 954 F.2d 1087, 1093 (5th Cir. 1992); *Mallia v. PaineWebber, Inc.*, 889 F. Supp. 277, 281-282 (S.D. Tex. 1995); *Kenworthy v. Hargrove*, 855 F. Supp. 101, 105-06 (E.D. Pa. 1994); *Lenz v. Associated Inns and Rest., Co. of Am.*, 833 F. Supp. 362, 379-80 (S.D. N.Y. 1993)).

With the limited exception discussed below, the Court agrees that the Plaintiffs have failed to allege an individual claim for breach of fiduciary duty, as explained below.[13]

Count 2 of the Second Amended Petition revolves around allegations of self-dealing with respect to MCL's assets and business, hiding and/or misappropriating MCL's assets, usurpation of MCL's business opportunities, improperly competing and/or dealing with MCL, and failing to provide information to the Plaintiffs. As with Count 1, Count 2 contains no allegations that the Plaintiffs were directly harmed as a result of the Defendants' alleged bad acts. Indeed, when asked by the Court at the Hearing, the Objecting LPs' counsel was again unable to articulate any injury to her clients separate and apart from direct injury to MCL, save and except for the theoretical tax liability just discussed.[14]

Thus, based on the facial allegations of the Second Amended Petition, the Court finds that, with the limited exception of failure to provide tax-related information to the Plaintiffs: (1) as of the bankruptcy petition date, MCL could maintain a cause of action against the Defendants for breach of fiduciary duty, and (2) the alleged damages to the Objecting LPs are derivative of direct injury to MCL. Thus, the Court concludes that such claims are derivative claims that were property of the MCL estate that may now only be pursued or released by the Plan Agent. *See, e.g., NC12, Inc.*, 478 B.R. at 833 (finding breach of fiduciary duty claim to belong to the estate when allegations of damages all referred to injury to the debtor).

      c.    <u>Counts 3 – 6:  Fraud, Fraud in the Inducement, Fraud by Non-Disclosure and Statutory Fraud</u>[15]

As alleged by the Plaintiffs in Counts 3 through 6:

---

[13] Because the Court finds that the claim is derivative, it need not address the Plan Agent's argument that no fiduciary duty runs between the parties.

[14] *See* § II.A.2.a, *supra*.

[15] The Second Amended Petition lumps the allegations in Counts 3 through 6. For purposes of this Memorandum Opinion, the Court assumes that Count 3 is fraud, Count 4 is fraud in the inducement, Count 5 is fraud by non-disclosure, and Count 6 is statutory fraud.

Defendants committed fraud to the detriment of Plaintiffs by making material misrepresentations and omissions to Plaintiffs as set forth herein above, which include without limitation misrepresentations and/or omissions about the planned development of the Property, details of a the amounts and nature of their investments in [MCL], use of [MCL's] assets, planned distribution of proceeds from [MCL] and/or its Property, assignments with others not approved by the partners, and eventually the outright heist of all of [MCL's] Property.

When Defendants made the above misrepresentations and omissions, they knew that the misrepresentations were false and the omissions material, or they made said misrepresentations and omissions recklessly and as a positive assertion, but without any knowledge of the truth of the misrepresentations.

Defendants made the above misrepresentations and material omissions with the intention that Plaintiffs rely and act upon them. Plaintiffs acted in reasonable reliance on Defendants' misrepresentations and omissions by among other things, entering tin [*sic*] the [MCL] deal with Defendants and allowing Malouf Interests to become the general partner of [MCL]. Defendants' conduct also constitutes Fraud, Fraud in the Inducement, Fraud by Nondisclosure and Statutory Fraud.

Accordingly, the Defendants' actions have caused Plaintiffs and [MCL] actual, consequential, incidental, special and exemplary damages in excess of the minimum jurisdictional limits of this Court for which they hereby sue.

Second Amended Petition at ¶¶ 49-52.

According to the Plan Agent, claims of fraudulent use and/or disposition of assets belong to the legal entity and are derivative claims. Motion at ¶ 28 (citing *Providential Inv. Corp. v. Dibrell*, 320 S.W.2d 415, 417 (Tex. Civ. App. – Houston, 1959)). Thus, the Plan Agent argues that the Plaintiffs' causes of action for fraud, fraud by nondisclosure, and statutory fraud do not support a direct claim by the Plaintiffs that they were injured separate and apart from an alleged injury to MCL. *Id.* (citing *Whalen*, 954 F.2d at 1093; *Mallia*, 889 F. Supp. at 281-282; *Lenz*, 833 F. Supp. at 379-80; and *Kenworthy*, 855 F. Supp. at 105-06).[16] Similarly, in their reply brief, the Defendants argue that the Plaintiffs' mere pleading of the claims as direct is insufficient. Instead, per the Defendants, the Court must look to the injury

---

[16] The Motion does not address the Plaintiffs' fraudulent inducement claim because that claim was added by the Second Amended Petition, which was filed after the Motion.

itself and whether such injury was direct to the entity or the plaintiff. Defendants' Reply to Supplemental Objection [Dkt. 312] ¶¶ 13 – 16 (citing *Asshauer v. Wells Fargo Foothill*, 263 S.W.3d 468, 472 (Tex. App. – Dallas 2008)).

Based on the facial allegations of the Second Amended Petition, the Court agrees that Counts 3, 5, and 6, as they allege fraud, statutory fraud, and fraud by non-disclosure, are derivative claims. Although the claims are drafted as "direct" claims, they are each based upon allegations of direct harm to MCL's value, which resulted in indirect harm to the Plaintiffs via a diminution in the value of their limited partnership interests in MCL. There is simply nothing contained in the Second Amended Petition or argued by counsel at the Hearing that leads this Court to find that the alleged misrepresentations resulted in a direct injury to the Plaintiffs.

Although it does not appear that MCL could maintain an action based upon alleged misrepresentations to third parties, the Count 3, 5, and 6 claims for fraud, statutory fraud, and fraud by non-disclosure appear to mirror the claims for breach of contract and breach of fiduciary duty that this Court previously found are derivative in nature. Although artfully redrafted to resemble direct claims, the Second Amended Petition fails to allege any damages to the Plaintiffs that arise separate and apart from the diminution in the value of their limited partnership interests in MCL. As such, the Court finds and concludes that the claims for fraud, statutory fraud, and fraud by non-disclosure are derivative claims that may only be pursued or released by the Plan Agent.

The Court will now turn to the Plaintiffs' claim of fraudulent inducement. At the Hearing, the Objecting LPs argued that they held direct claims for fraudulent inducement

regarding their (1) initial entry into the LP Agreement, and (2) entry into the Withdrawal of General Partner.

In their reply, the Defendants argue that any fraudulent inducement claims are derivative because the only potential damages are (1) diminution in the value of the Plaintiffs' interests in MCL, or (2) loss of the Plaintiffs' initial investment in MCL. According to the Defendants, each measure of damage is derivative of the direct damage suffered by MCL. Defendants' Reply to Supplemental Objection at ¶¶ 12-16. Per the Defendants, "[i]t is noteworthy because if all the [Objecting LPs] claim that the same acts caused them to suffer the same damages, then the injury cannot be 'personal'...." *Id. at* ¶ 14. The Defendants then cite to *Wesolek v. Layton*, 871 F. Supp. 2d 620, 632 (Bankr. S.D. Tex. 2012), for the proposition that a limited partner cannot sue directly based upon the loss of its investment. *Id.* at ¶ 15.

With the parties' respective arguments in mind, the Court will first address the Plaintiffs' allegations related to entry into the Withdrawal of General Partner, then the allegations regarding entry into the LP Agreement. With respect to the claim for alleged fraudulent inducement to enter into the Withdrawal of General Partner, the petition alleges that:

> Part of Silverman's motivation for this agreement [entry into the Withdrawal of General Partner] was that Malouf made a number of promises to Silverman and the other investors of [MCL] that Malouf and his entities would follow the [LP Agreement] and business plan for this project, they would keep the other investors fully informed of the activities of [MCL], the investors would be able to maintain a substantial portion of their interests in the project, the project would repay loans made by Silverman and affiliated entities and other Class A Investors would share in the proceeds once the project was complete. None of that happened. But for the Malouf defendants' representations, Silverman would not have allowed his entity to resign as the general partner and Plaintiffs would not have consented to have the Malouf parties take over the helm of [MCL].

Second Amended Petition at ¶ 21. According to the Plaintiffs, once Malouf Interests gained control of MCL, the Defendants then began to self-deal, usurp corporate opportunities,

mismanage MCL, attempt to improperly dispose of assets, and take the various other actions described in this Court's analysis of Counts 1 and 2. *See* § II.A.2.a and II.A.2.b, *supra.*

The Fifth Circuit has previously held that inducement claims are direct, not derivative, claims. *See, e.g., Seven Seas*, 522 F.3d at 856; *Educators Grp.*, 25 F.3d at 1285–86. This Court, however, must look behind the label given a claim to the nature of the injury alleged to determine whether, in substance, the claim is a derivative claim and property of the estate. *R.E. Loans,* 2013 WL 1265205, at *4. Here, the Defendants' alleged misrepresentations were not to MCL, but to third parties; thus, in all likelihood, MCL could not have raised the claim as of its bankruptcy petition date. The nature of the Plaintiffs' alleged injury, however, again appears to derive solely from the diminution in value of their respective interests in MCL. Indeed, each of the alleged wrongful actions, if they occurred, involved mismanaging MCL's business and assets, misappropriating MCL's assets, usurping business opportunities, and/or taking other actions that directly affected MCL's value and, thus, the value of the Plaintiffs' limited partnership interests. Had the diminution in MCL's value not occurred, the Plaintiffs would not have been injured by their entry into the Withdrawal of General Partner, as there is no link in the Second Amended Petition between Malouf Interests' appointment as general partner of MCL and any direct damages to the Plaintiffs. Thus, the Court concludes that the Count 4 fraudulent inducement claim, as it relates to alleged fraudulent inducement to enter into the Withdrawal of General Partner, is a derivative claim that may only be pursued or released by the Plan Agent.

The Plaintiffs' claim for fraudulent inducement to enter into the LP Agreement, however, appears to allege a direct cause of action, insofar as it involves direct harm to the Plaintiffs in the form of their initial investment in MCL. As discussed above, the Defendants argue that any claim accruing to all limited partners, such as a loss of their initial investments, are derivative

claims belonging to MCL. Defendants' Reply to Supplemental Objection at ¶ 15 (citing to *Wesolek*, 871 F. Supp. 2d at 632 ("the court concludes that claims arising from loss of the value of plaintiffs' investment in the Funds belong not to the plaintiffs individually, but to the Funds, and that under Texas law the plaintiffs must assert such claims derivatively on behalf of the limited partnerships, not individually on their own behalf or as representatives of a class")). This Court's finding that damages arising from alleged fraudulent inducement to enter into the LP Agreement are direct damages, though, is not contrary to the *Wesolek* opinion. Indeed, in *Wesolek* the alleged misrepresentations occurred *after* the plaintiffs had invested in the subject funds. *Wesolek*, 871 F. Supp. 2d at 633 ("Accordingly, the court concludes that the claims plaintiffs have asserted for conversion, violation of the Texas Theft Liability Act, money had and received, breach of fiduciary duty, negligence, and for common law fraud and violation of the Texas Securities Act arising from misrepresentations made *after* the plaintiffs had invested in the Funds are claims that the plaintiffs can only bring derivatively on behalf of the Funds.") (emphasis added). The Defendants' reliance on *Asshauer v. Wells Fargo Foothill*, 263 S.W.3d 468 (Tex. App. Dallas 2008) and *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242 (Tex. App. – Dallas 2008) is similarly misplaced. As with *Wesolek*, these cases involved a plaintiff bringing claims that, although alleged as direct, were seeking to recover damages that derived from injury to the value of the underlying limited partnership. *See Nauslar*, 170 S.W.3d at 250 ("Plaintiffs do not have a separate, individual right of action for injuries to the partnership that diminished the value of their ownership interests in that entity."); *Asshauer*, 263 S.W.3d at 472 ("Here, appellants similarly [to *Nauslar*] allege personal damages properly belonging to the limited partnerships, specifically, a diminution in value of partnership interest or a share of partnership income."). Each of those cases is inapposite to the Plaintiffs' allegations here of fraudulent

inducement to enter into the LP Agreement, which, as argued by counsel at the Hearing, allegedly resulted in damages equal to their initial investment in MCL.

Accordingly, the Court concludes that, to the extent it exists, a claim by the Plaintiffs that they were fraudulently induced to enter into the LP Agreement would be a direct claim that may be maintained by the Plaintiffs. MCL itself did not suffer any direct damage from the alleged inducement that resulted in the Plaintiffs' entry into the LP Agreement and the payment of their initial investments. *See, e.g., Mallia v. PaineWebber, Inc.*, 889 F. Supp. 277, 282-83 (S.D. Tex. 1995) ("[I]t is clear that Plaintiffs do not seek any relief for injury allegedly suffered by the partnerships themselves. Rather, the Original Complaint consistently alleges that the partnerships were unsuitable investment vehicles for the Plaintiffs and that Plaintiffs' decisions to invest in the partnerships were improperly induced by fraudulent statements, negligent misrepresentations, or combinations of both.").

Although the Court is not to evaluate the merits of the underlying claims in making its analysis, it does note several significant issues with the Plaintiffs' claim that the Defendants fraudulently induced them into entering into the LP Agreement. First, a thorough review of the Second Amended Petition reveals that the allegations regarding the claimed inducement only appear in passing. Indeed, nothing in the "Facts" section appears to relate to such inducement, with the only appearance being in paragraph 51: "Plaintiffs acted in reasonable reliance on Defendants' misrepresentations and omissions by among other things, entering tin [*sic*] to the City Lights deal with Defendants…." Thus, it appears that the Second Amended Petition fails to adequately plead a claim of fraudulent inducement. Further, when questioned at the Hearing regarding the alleged inducement, counsel for the Objecting LPs was unable to articulate when or how the alleged statements were made or by whom. Accordingly, the Court has serious concerns

regarding the veracity of the allegations and wonders if this bare allegation was added in a last-minute attempt to give the appearance of a direct claim.  Second, as admitted in the Second Amended Petition, MDC (which was controlled by Silverman), not Malouf Interests, was the general partner when MCL was formed and the Plaintiffs entered into the LP Agreement. Therefore, it appears that the only entity (and individual) that had authority to speak on MCL's behalf at the time the LP Agreement was signed is not a defendant to the Prepetition Lawsuit.

Under these facts, the Court is hard-pressed to understand how it was the Defendants' alleged statements and/or omissions that led to the Plaintiffs' entry into the LP Agreement.  As previously stated, though, the actual merits of the claim are not under scrutiny at this point in time and, if a proper claim for fraudulent inducement into the LP Agreement can be stated, it is a direct claim.

### d.    Count 7:  Negligent Misrepresentation

As alleged by the Plaintiffs in Count 7 of the Complaint:

Defendants negligently misrepresented the matters detailed above in multiple transactions in which Defendants had a pecuniary interest. These Defendants provided the false information for the guidance of Plaintiffs in their business decisions, and Defendants did not exercise reasonable care or competence in obtaining or communicating the information to Plaintiffs.

Plaintiffs have suffered pecuniary loss by justifiably relying on the representations and omissions of the Defendants.

Second Amended Petition at ¶¶ 54-55.

As explained previously, this Court must look behind the label given a claim to determine whether, in substance, the claim is a derivative claim and property of the estate.  *R.E. Loans*, 2013 WL 1265205, at *4.  Here, although alleged as a claim for negligent misrepresentation to the Plaintiffs, which is arguably a direct claim, the only alleged harm associated with the claim is derivative of an injury to MCL.  Indeed, the Plan Agent correctly argues that the Plaintiffs fail to

describe any "business" in which they and the Defendants were involved except the business transactions conducted by MCL.  Accordingly, the only guidance provided would, by default, have been related to the operation of MCL's business.

Based upon the facial allegations of the Second Amended Petition, the Court finds that the Plaintiffs' claim for negligent misrepresentation alleges only direct harm to MCL, with any harm to the Plaintiffs arising derivatively due to the diminution in value of their limited partnership interests in MCL.  Thus, the Court concludes that the claim for negligent misrepresentation was property of the MCL estate that may now only be pursued or released by the Plan Agent.

> e.    Count 8:  Civil Conspiracy; Requests for Attorneys' Fees and Exemplary Damages

As alleged by the Plaintiffs in Count 8:

> Defendants acted in concert and conspired together to commit the tortious acts described herein. Accordingly, the Defendants should be held jointly and severally liable for any damages awarded to Plaintiffs as a result of this lawsuit.

Second Amended Petition at ¶ 58.  The Plaintiffs also request exemplary damages, presumably related to all eligible counts in the Second Amended Petition.  *Id.* at 60.

Any claim for civil conspiracy and/or exemplary damages must rise or fall with the underlying tort claim.  *See, e.g., Deep Marine Holdings, Inc. v. FLI Deep Marine LLC (In re Deep Marine Holdings, Inc.),* 2011 WL 2420274, at *10 (Bankr. S.D. Tex. June 13, 2011) ("The aiding and abetting claims are derivative claims to the extent that the actions that were aided and abetted resulted in derivative injuries[.]"); *Zurita v. Lombana*, 322 S.W.3d 463, 482 (Tex. App. – Houston [14th Dist.] 2010, pet. denied) (civil conspiracy is a derivative tort, and for a plaintiff to prevail under this theory, the defendant must also be liable for an underlying tort)).  Thus, any claim for conspiracy related to the (1) Count 1 claim for breach of the LP Agreement (with the

sole exception of any claims arising from the Defendants' alleged failure to provide tax-related information), (2) Count 2 claim for breach of fiduciary duty (with the sole exception of any claims arising from the Defendants' alleged failure to provide tax-related information), (3) Count 3 claims for fraud, fraud in the inducement related to entry into the Withdrawal of General Partner, fraud by nondisclosure and statutory fraud, and (4) the Count 7 claim for negligent misrepresentation alleges direct harm to MCL, with any harm to the Plaintiffs arising derivatively due to the diminution in the value of their limited partnership interests in MCL. Thus, the Court concludes that any related claims for conspiracy and/or exemplary damages were property of the MCL estate that may only be pursued or released by the Plan Agent. However, to the extent claims for conspiracy and/or exemplary damages lie with respect to those claims found herein to be direct claims of the Plaintiffs, so too are the conspiracy and exemplary damages claims, if any.

The Plaintiffs also allege that they are entitled to attorneys' fees "in accordance with Texas law, including without limitation, the Texas Civil Practice and Remedies Code." Second Amended Petition at ¶ 59. Due to the vagueness of these allegations, the Court is unable to determine under which statute the Plaintiffs are moving. However, to the extent an alleged claim is found herein to be a derivative claim that was property of the MCL estate, as detailed above, the Court finds that the Plan Agent, not the Plaintiffs, has sole authority to bring the related claim for attorneys' fees pursuant to the liquidating plan confirmed by this Court. However, to the extent claims for attorneys' fees lie with respect to those claims found herein to be direct claims of the Plaintiffs, so too are the attorneys' fees claims, if any.

### 3. Analysis of the 9019 Factors

At the Hearing, the Plan Agent proffered her own testimony regarding her analysis of, and decision to enter into, the Settlement. Although given the opportunity, no party sought to question the Plan Agent on cross examination. Thus, the Plan Agent's testimony stands unchallenged and unrefuted.

During her proffer, the Plan Agent testified that she reviewed the then live state court petition, spoke with counsel for each side with respect to their competing claims and defenses, and reviewed relevant documents available to her, including the LP Agreement. The Plan Agent further testified that, based upon this due diligence, she believes that it would be difficult for MCL to prevail on the various claims now alleged in the Second Amended Petition. For example, with respect to allegations regarding self-dealing and usurpation of business opportunities, the Plan Agent testified that she believes it would be difficult to prevail at trial because, at the relevant time, MCL did not have sufficient operating funds to pursue the opportunity and was unable to obtain capital contributions from its partners. Similarly, the Plan Agent testified that it would be difficult to prevail on the breach of fiduciary duty claims related to competing opportunities when the LP Agreement specifically permits limited partners to pursue competing interests. Moreover, the Plan Agent testified that MCL currently holds approximately $30,000, which would be insufficient to prosecute the Prepetition Lawsuit, even if certain claims could be won on summary judgment. Finally, per the Plan Agent, the Defendants hold approximately 88-91% of the allowed claims against the MCL estate, and they support the Settlement. Thus, in light of these facts, the Plan Agent testified that, in the exercise of her sound business judgment, she believes that the $100,000 payment contemplated by the Settlement in return for the release of claims previously owned by the MCL estate against the

Defendants is fair and equitable and in the best interests of MCL and its creditors. Finally, she testified that the Settlement was a product of good-faith, arms-length negotiations among the parties thereto.

Overall, the Court finds the Plan Agent's testimony credible and her analysis persuasive. First, as clearly shown by the evidence at the Hearing, the Prepetition Lawsuit involves significant uncertainty and complexity and the facts are clearly in dispute. Although in their Supplemental Objection the Objecting LPs argue that $250,000 in damages could be recovered from the Defendants with little additional effort,[17] the Court notes that the claim underlying these alleged damages was not included in the Second Amended Petition. Further, the testimony showed that there is a disputed, material fact issue regarding which entity owned the site plans at issue in the dropped claim. Thus, the Court does not find the Objecting LPs' argument on this point persuasive. Based upon the evidence presented at the Hearing, the Court finds that the $100,000 Settlement payment is within the range of reasonableness.

Second, the complexity of the underlying litigation favors settlement. As shown at the Hearing, there are substantial issues of material fact in dispute. Thus, the Plan Agent would need to incur substantial costs related to discovery to pursue the claims. Further, a significant portion of the allegations revolve around the allegedly inappropriate transfer of real property from MCL and attempts to sell that property outside the confines of the LP Agreement. MCL's real property, however, was ultimately sold with Court approval during the pendency of its bankruptcy case, and the sale orders each contain findings of good faith and fair dealing. Thus, it

---

[17] At the time the Settlement was negotiated, the First Amended Petition was the live pleading and the only quantified damages alleged were $250,000 for the Defendants' alleged misuse of site plans that purportedly belonged to MCL. In their Supplemental Objection, the Objecting LPs argued that this $250,000 claim could be recovered by the Plan Agent with little additional effort as reason to deny the Settlement on the grounds that a $100,000 payment by the Defendants is not reasonable.

appears that the bankruptcy case itself mooted many of the allegations contained in the Second Amended Petition.

Finally, no general unsecured creditor has objected to approval of the Settlement. Because it is highly unlikely that there would ever be a distribution to the limited partners, it is the general unsecured creditors who are the true parties in interest with respect to the Settlement. And they overwhelmingly support approval of the Settlement.

Accordingly, the Court finds that the Settlement is fair and equitable and in the best interests of MCL and its creditors. The Court further finds that the Settlement is the product of good-faith, arms-length negotiations, and that entry into the Settlement is an exercise of the Plan Agent's sound business judgment.

## III.    CONCLUSION

Based upon the record before it, the Court has found that, with the sole exception of claims for theoretical tax liability arising from the Defendants' alleged failure to provide tax returns and tax-related information to the Plaintiffs, the Count 1 claim for breach of the LP Agreement alleges direct harm to MCL, with any harm to the Plaintiffs arising derivatively due to the diminution in value of their limited partnership interests in MCL. Thus, the Court concluded that the Count 1 claim for breach of the LP Agreement, with the sole exception noted above, is a derivative claim that was property of the MCL estate that may now only be pursued or released by the Plan Agent.

The Court further found that, with the sole exception of claims for theoretical tax liability arising from the Defendants' alleged failure to provide tax returns and tax-related information to the Plaintiffs, the Count 2 claim for breach of fiduciary duty alleges direct harm to MCL, with any harm to the Plaintiffs arising derivatively due to the diminution in value of their limited

partnership interests in MCL.  Thus, the Court concluded that the Count 2 claim for breach of fiduciary duty, with the sole exception noted above, is a derivative claim that was property of the MCL estate that may now only be pursued or released by the Plan Agent.

The Court further found that the Count 3 claim for fraud, the Court 4 claim for fraud in the inducement related to entry into the Withdrawal of General Partner, the Count 5 claim for fraud by non-disclosure, the Count 6 claim for statutory fraud, and the Count 7 claim for negligent misrepresentation each allege only direct harm to MCL, with any harm to the Plaintiffs arising derivatively due to the diminution in value of their limited partnership interests in MCL. Thus, the Court concluded that each of these claims is a derivative claim that was property of the MCL estate and that may now only be pursued or released by the Plan Agent.

The Court further found that the Count 1 claim that the Defendants breached the LP Agreement and the Count 2 claim that the Defendants breached their fiduciary duties[18] to the Plaintiffs, each by allegedly failing to provide tax returns and tax-related information to the Plaintiffs, allege direct harm to the Plaintiffs in the form of theoretical tax liability owed by the Plaintiffs, which arises independently from any potential harm to MCL.  Thus, the Court concluded that each of these claims is a direct claim that may be pursued by the Plaintiffs, including the Objecting LPs.

The Court further found that the Count 4 claim that the Plaintiffs were fraudulently induced to enter into the LP Agreement alleges direct harm to the Plaintiffs in the form of their initial investments in MCL, which arises independently from any potential harm to MCL.  Thus, the Court concluded that this claim is a direct claim that may be pursued by the Plaintiffs, including the Objecting LPs.

---

[18] Because the Court is not to analyze the underlying merits of the alleged claims, this Memorandum Opinion should not be construed as determining that the Defendants, individually or collectively, owed fiduciary duties to any of the Plaintiffs.

The Court further found and concluded that the Count 8 claim for civil conspiracy and any claim for exemplary damages and/or attorneys' fees arising from or related to a derivative claim that was property of the MCL estate (as detailed in the preceding paragraphs) is also a derivative claim that may only be pursued or released by the Plan Agent.

The Court further found and concluded that to the extent a Count 8 claim for civil conspiracy or a claim for exemplary damages and/or attorneys' fees arises from or is related to a direct cause of action owned by the Plaintiffs (as detailed in the preceding paragraphs), such claim is also a direct claim that may be pursued by the Plaintiffs, including the Objecting LPs.

Finally, the Court found that the Settlement of MCL's claims against the Defendants is fair and equitable and in the best interests of MCL and its creditors, it is the product of good-faith, arms-length negotiations, and that entry into the Settlement is an exercise of the Plan Agent's sound business judgment. But, because the Settlement also attempts to dispose of a few direct claims of the Plaintiffs, it cannot be approved unless the Plan Agent and the Defendants agree to remove the Plaintiffs' direct claims (as found by the Court) from the Settlement.

Thus, the Plan Agent and the Defendants are directed to confer with each other immediately to see if an agreement can be reached to modify the Settlement consistent with this Memorandum Opinion. If the Defendants agree to exclude the Plaintiffs' direct claims (as found by the Court) from the Settlement, the Settlement will be approved.

The Plan Agent is directed to report to the Court (through its Courtroom Deputy) and counsel for the Objecting LPs within ten (10) days of the entry of this Memorandum Opinion as to whether the Defendants have so agreed. If they have so agreed, an Order approving the Settlement, as modified, shall be uploaded for the Court's consideration. If they have not so

agreed, an Order denying the Settlement shall be uploaded.  All counsel are directed to attempt to agree on the form of the Order to be uploaded for the Court's consideration.

# # # END OF MEMORANDUM OPINION # # #